■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PAUL CORTEZ, Appellant. [923 NYS2d 544]—

Judgment, Supreme Court, New York County (Carol Berkman, J.), rendered March 23, 2007, convicting defendant, after a jury trial, of murder in the second degree, and sentencing him to a term of 25 years to life, affirmed.

Defendant was not deprived of his right to conflict-free counsel. Defendant asserts that both of the attorneys who represented him at trial operated under conflicts between their own interests and those of their client. However, we find that, at most, only one attorney had a conflict, that defendant validly

---

waived this conflict, and that there is no record evidence of prejudice.

At the outset of the trial, the court held defendant's lead attorney in contempt and imposed a fine for her unjustified failure to appear. This was not enough to create a conflict. Defendant's claim that the contempt citation would have placed the attorney in fear of further antagonizing the court and would have inhibited her ability to zealously defend her client rests on speculation and is unsupported by anything in the record.

At the time of trial, there was an unrelated criminal case pending in the same county against defendant's other attorney. Since the attorney was not accused of any crime relating to the charges against defendant, the conflict was waivable (*see e.g. United States v Perez*, 325 F3d 115, 125-127 [2d Cir 2003]). After the court conducted a sufficient inquiry pursuant to *People v Gomberg* (38 NY2d 307 [1975]), defendant made a valid waiver of the conflict, and we reject defendant's arguments to the contrary.

In any event, the existing record is insufficient to show that the conduct of the defense was affected by the operation of either or both of these alleged conflicts of interest (*see People v Konstantinides*, 14 NY3d 1, 10-13 [2009]; *People v Longtin*, 92 NY2d 640, 644-645 [1998]). Defendant asserts that his attorneys mishandled various aspects of the extensive forensic evidence against him, by failing to take certain investigative steps and otherwise. Whether these claims are viewed as evidence that the conflict or conflicts operated on the defense, or as general ineffective assistance of counsel claims, they are unreviewable on direct appeal, and thus procedurally defective, because they involve matters outside the record (*see People v Rivera*, 71 NY2d 705, 709 [1988]; *People v Love*, 57 NY2d 998 [1982]). If the attorneys reasonably believed that the lines of attack on the prosecution's forensic evidence suggested by defendant on appeal would have been futile or counterproductive, their conduct would not have fallen below an objective standard of reasonableness. Similarly, if these lines of attack would have actually been futile or counterproductive, counsel's failure to pursue them would not have been prejudicial. Accordingly, the present, unexpanded record, which is silent as to these matters, fails to satisfy either the reasonableness or prejudice prongs contained in either the state or federal standards (*see People v Benevento*, 91 NY2d 708, 713-714 [1998]; *see also Strickland v Washington*, 466 US 668 [1984]).

The court's ruling regarding evidence of defendant's journal entries does not warrant reversal. Defendant does not challenge

entries relating to his antagonism toward the victim, who was his former girlfriend, but challenges the introduction of entries pertaining to two other women. At trial, he only argued that this constituted evidence of uncharged crimes or bad acts. However, that argument was meritless, because the entries only reflected hostile thoughts (*see generally People v Flores*, 210 AD2d 1, 2 [1994], *lv denied* 84 NY2d 1031 [1995]). Defendant's remaining contentions concerning this evidence are unpreserved and we decline to review them in the interest of justice. As an alternative holding, we find no basis for reversal. In the context of this case, defendant's hostility toward women, not limited to the victim, had a bearing on motive and was not unduly prejudicial (*see People v Moore*, 42 NY2d 421, 428 [1977]). In any event, any error regarding the receipt of this evidence, or the absence of a limiting instruction, was harmless in light of the overwhelming evidence of guilt.

One of the many links in the chain of circumstantial evidence against defendant was provided by a witness who did not identify him in court, but gave a detailed description of the man she saw on a relevant occasion. Since defendant matched the description, the evidence was plainly admissible, and defendant's arguments go to the weight to be accorded the evidence, not its admissibility (*see generally People v Mirenda*, 23 NY2d 439, 452-454 [1969]). Defendant also argues that the court unduly restricted his cross-examination of this witness. However, by failing to make an offer of proof, and by acquiescing in the court's ruling, he failed to preserve that claim, including his constitutional argument (*see People v George*, 67 NY2d 817, 819 [1986]), and we decline to review it in the interest of justice. As an alternative holding, we find no violation of defendant's right of confrontation (*see Delaware v Van Arsdall*, 475 US 673, 678-679 [1986]).

Of defendant's challenges to the prosecutor's summation, the only one that is arguably preserved is his claim that the prosecutor ended his summation with an improper appeal to the jury's emotions. Although we find that the prosecutor's rhetoric was excessive, we find the error to be harmless. By failing to object, by making general objections or objections that did not articulate the grounds asserted on appeal, or by failing to request further relief after the court took curative actions, defendant failed to preserve his remaining summation claims, and we decline to review them in the interest of justice. As an alternative holding, we find that most of the challenged remarks were generally permissible, and that the court's curative actions were sufficient to prevent defendant from being prejudiced by any improprieties

(*see People v Overlee*, 236 AD2d 133 [1997], *lv denied* 91 NY2d 976 [1998]; *People v D'Alessandro*, 184 AD2d 114, 118-119 [1992], *lv denied* 81 NY2d 884 [1993]). In any event, any errors were likewise harmless. In particular, we note that the evidence clearly supported the conclusion that defendant left his fingerprint in the victim's blood, which had spattered on a wall of her apartment, and it refuted the theory that this was a latent fingerprint left by defendant on a previous visit, over which the blood had spattered. Accordingly, it was entirely proper for the prosecutor to make summation arguments along these lines. Moreover, the fingerprint itself provided evidence of defendant's guilt, and when combined with an extensive amount of other circumstantial evidence, it provided overwhelming evidence of defendant's guilt. Concur—Andrias, J.P., Saxe, Moskowitz and Acosta, JJ.

Freedman, J., concurs in a separate memorandum as follows: I write only to emphasize my concern with the aspect of the prosecutor's summation where he connected defendant's diary entries from 1999 and 2000 regarding former girlfriends to what happened to the victim here. The prosecutor claimed that these diary entries, of questionable relevance, demonstrated that defendant had become increasingly more "hostile to women," and that previous rejections had caused a "murderous rage" to develop in defendant. I believe that these "psychological opinions" went beyond fair comment on the evidence.