Clark, J.
Appeal from a judgment of the County Court of St. Lawrence County (Richards, J.), rendered April 21, 2014, upon a verdict convicting defendant of the crimes of criminal sexual act in the third degree (three counts), rape in the third degree, endangering the welfare of a child and unlawfully dealing with a child in the first degree.
Following a jury trial, defendant was found guilty of various crimes (counts 2, 4, 6, 8, 9 and 10) stemming from allegations that he provided a minor (hereinafter the victim) with alcohol and marihuana before having oral sex and sexual intercourse with her. Defendant was sentenced to an aggregate term of 11 years in prison, to be followed by three years of postrelease supervision. Defendant now appeals.
The principal task before us on this appeal is to determine whether the numerous remarks made by the District Attorney (hereinafter DA) during summation were so prejudicial in their cumulative effect that they operated to deny defendant his fundamental right to a fair trial. We conclude that they were and, although all but one of defendant’s challenges to the DA’s statements were not preserved by appropriate objections, we exercise our interest of justice jurisdiction (see CPL 470.15 [6] [a]) and reverse the judgment of conviction.
“Counsel is afforded wide latitude in advocating for his or her case during summation, but ‘[t]here are certain well-defined limits’ that may not be exceeded” (People v Casanova, 119 AD3d 976, 977 [2014], quoting People v Ashwal, 39 NY2d 105, 109 [1976]). Here, the DA’s numerous inflammatory remarks during summation surpassed those limits. Specifically, the DA began her summation by commenting on defendant’s failure to deny the allegations when being questioned by the police and, as such, improperly shifted the burden of proof (see People v Diotte, 63 AD3d 1281, 1282-1283 [2009]). Specifically, in reference to the audio recording of defendant’s interrogation, the DA stated: ‘You will hear what [defendant] tells you in this [audio recording]. You can assess his credibility. His many, many inconsistencies, his outright falsehoods and his *1098 unbelievability. You’re not going to hear on the [recording] that he confessed. He’s not going to say I raped [the victim], he’s not going to say I had sexual intercourse with [the victim], he’s not going to say I had sexual contact with [the victim]. He’s not going to say any of that, but he never denies it until specifically asked. Think about that. You go into a police station knowing you’re being investigated for a rape, and you don’t deny it until you’re asked.”*
Following those remarks, County Court sua sponte interrupted the DA and excused the jury. The court then warned the DA that she could not comment on defendant’s failure to deny the allegations and, when the jury re-entered the courtroom, instructed the jury to ignore the DA’s last statements. Shortly thereafter, County Court again sua sponte interjected immediately after the DA inappropriately insinuated to the jury that, based upon the timing, defendant’s arrest was proof that he committed the alleged crimes. While not addressing a curative instruction to the jury, the court scolded the DA for this insinuation in front of the jury. The DA continued: “And then something very, very interesting. [Defendant] unknowingly makes an admission.” Upon defense counsel’s sustained objection — on the basis of mischaracterization of the evidence since there was no such admission — a sidebar took place and County Court agreed to direct the jury to disregard the DA’s last comment (compare People v Esposito, 225 AD2d 928, 932 [1996], lv denied 88 NY2d 935 [1996]). Finally, the aforementioned errors were only compounded when the DA concluded her summation with a paraphrase of defendant’s alleged question to the victim on the night of the incident, “how do you feel now that you’ve been taken by a real man?” by stating: “Ladies and gentlemen, I want you to have the final word to this defendant. I want you to tell him how it feels to have a guilty verdict from a real jury.” Once again, County Court sua sponte spoke to the jury advising that the DA’s comments were an improper appeal to its sympathy, but that it was to decide the case based only upon the evidence and not a' desire to exact revenge on defendant (see People v Bhupsingh, 297 AD2d 386, 388 [2002]; People v Andre, 185 AD2d 276, 278 [1992]).
In our view, despite County Court’s repeated instructions to the jury to disregard parts of the DA’s summation, the judgment of conviction must be reversed because her summation so “exceeded the bounds of fair advocacy” as to warrant a new *1099 trial (People v Calabria, 94 NY2d 519, 522-523 [2000]; see People v Riback, 13 NY3d 416, 423 [2009]). Mindful that “not every improper comment made by the prosecuting attorney during the course of closing arguments warrants reversal of the underlying conviction” (People v Forbes, 111 AD3d 1154, 1160 [2013]), the severity and frequency of the DA’s comments here are such that no curative instruction could have alleviated the prejudice created (see People v Tarantola, 178 AD2d 768, 770 [1991], lv denied 79 NY2d 954 [1992]). Moreover, in this case, where proof of defendant’s guilt was not overwhelming but, rather, turned almost entirely on the jury’s assessment of the victim, we cannot conclude that the DA’s comments were harmless (see e.g. People v Alexander, 94 NY2d 382, 385 [1999]). Accordingly, we find that defendant was deprived of a fair trial by several prejudicial remarks made by the DA in summation and therefore order a new trial (see People v Riback, 13 NY3d at 423; People v Calabria, 94 NY2d at 522-523; People v Ashwal, 39 NY2d at 110-111; People v Casanova, 119 AD3d at 978-979; People v Forbes, 111 AD3d at 1160).
In light of this decision, defendant’s remaining contention need not be addressed.
Peters, P.J., Lahtinen and Garry, JJ., concur. Ordered that the judgment is reversed, as a matter of discretion in the interest of justice, and matter remitted to the County Court of St. Lawrence County for a new trial on counts 2, 4, 6, 8, 9 and 10 of the indictment.

 The audio recording was admitted into evidence and was available to the jury during its deliberations, but was not played for the jury in open court.