■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PETER M. WLASIUK, Appellant. [24 NYS3d 787]—

Clark, J. Appeal from a judgment of the County Court of Chenango County (Cawley, J.), rendered October 26, 2012, upon a verdict convicting defendant of the crime of murder in the second degree.

After his third jury trial, defendant was once again convicted

of murdering his wife (hereinafter the victim).[1] In the early morning hours of April 3, 2002, the Chenango County Sheriff's Department responded to a report that a motor vehicle had crashed into Guilford Lake in Chenango County. At the scene, defendant informed first responders that the victim had swerved to avoid a deer and, as a result, had accidentally driven his pick-up truck into the lake. Defendant asserted that he had managed to escape from the vehicle, but had been unsuccessful in his attempts to drag the victim to the surface after the vehicle submerged. The victim's body was ultimately recovered from the bottom of the lake and, despite efforts to resuscitate her at the scene, she was pronounced dead upon her arrival at the emergency room. The ensuing investigation revealed evidence that contradicted defendant's version of events and also implicated defendant as having murdered the victim at their home and staged a motor vehicle accident to cover up his crime. At the close of the third trial, defendant was again convicted as charged. Defendant was sentenced to a prison term of 25 years to life. He now appeals, and we affirm.

Defendant argues that, because the People's theory that he smothered the victim to death and then staged a motor vehicle accident to cover up his crime was pure speculation, the verdict was against the weight of the evidence. As relevant here, the People had to prove beyond a reasonable doubt that defendant caused the victim's death after having acted with the intent to do so (*see* Penal Law § 125.25 [1]). While a contrary verdict would not have been unreasonable, considering that the jury could have believed defendant's version of events, we find defendant's convictions to be supported by the weight of the evidence (*see People v Green*, 121 AD3d 1294, 1294-1295 [2014], *lv denied* 25 NY3d 1164 [2015]; *People v Vanderhorst*, 117 AD3d 1197, 1198-1200 [2014], *lv denied* 24 NY3d 1089 [2014]).

Here, among other things, defendant's contradictory statements to law enforcement personnel and others, the physical evidence concerning the victim's hair and plant material,[2] the testimony concerning an argument between defendant and the victim on the night of the victim's death, the testimony of the People's accident reconstruction expert, and the findings by the forensic pathologist who performed the autopsy on the victim

---

**1.** Defendant's two previous convictions were reversed by this Court (90 AD3d 1405 [2011]; 32 AD3d 674 [2006], *lv dismissed* 7 NY3d 871 [2006]).

**2.** Evidence admitted at trial demonstrated that the victim's hair and clothing were matted with burrs from a burdock plant. Further, 18 strands of hair—likely to be the victim's—were found in a burdock plant in the backyard of the home that the victim shared with defendant. The victim's hair was also found in the bed of defendant's truck.

provided ample evidence that defendant intentionally caused the victim's death. Viewing the evidence in a neutral light and according deference to the jury's ability to "view the witnesses, hear the testimony and observe demeanor, we defer to [its] credibility determination and conclude that defendant's conviction[ ] [was] not against the weight of the evidence" (*People v Lanier*, 130 AD3d 1310, 1311 [2015], *lv denied* 26 NY3d 1009 [2015] [internal quotation marks and citation omitted]).

We are not persuaded by defendant's contention that the prosecutor's improper comments during summation resulted in an unfair trial. Although we can agree that the summation was not error free and that some of the comments were improper, reversal is required only where the prosecutorial misconduct results in substantial prejudice to the defendant to such an extent that he or she was deprived of due process of law (*see People v Ashwal*, 39 NY2d 105, 109 [1976]; *People v Newkirk*, 75 AD3d 853, 857 [2010], *lv denied* 16 NY3d 834 [2011]; *People v Shutter*, 72 AD3d 1211, 1214 [2010], *lv denied* 14 NY3d 892 [2010]; *People v Robinson*, 16 AD3d 768, 770 [2005], *lv denied* 4 NY3d 856 [2005]). Such is not the case here.

In determining whether prosecutorial misconduct deprived a defendant of a fair trial, this Court considers "its severity and frequency, the corrective action taken, if any, and whether the result would likely have been the same in the absence of the conduct" (*People v Casanova*, 119 AD3d 976, 979 [2014]; *see People v Goldston*, 126 AD3d 1175, 1179 [2015], *lv denied* 25 NY3d 1201 [2015]). Here, County Court sustained most of defendant's objections, admonished the prosecutor outside the presence of the jury for improperly "vouch[ing] for the witnesses and suggest[ing] that [there was] a community effort" to prosecute defendant and emphasized to the jurors during its charge that it was their "recollection of the facts in evidence [that was] controlling[,] not what either attorney ha[d] stated during their summations." Although the prosecutor vouched for the credibility of some of the People's witnesses by characterizing them as "good men and women" and "interested" and "concerned citizens," and invoked the word "community"— which was not the best practice—in the particular context of this trial, we view such remarks as a fair response to defendant's summation wherein counsel suggested that the People's witnesses were tailoring their testimony and possibly even colluding (*see People v Moye*, 12 NY3d 743, 744 [2009]; *People v Galloway*, 54 NY2d 396, 399 [1981]; *People v Williamson*, 77 AD3d 1183, 1185 [2010]). Inasmuch as the prosecutor's improper comments were not pervasive, and a guilty verdict

would have been likely in their absence, we determine that the comments did not rise to such a level as to deprive defendant of a fair trial (*see People v Hopkins*, 56 AD3d 820, 821 [2008]; *People v Typhair*, 12 AD3d 832, 834 [2004], *lv denied* 4 NY3d 803 [2005]; *cf. People v Wright*, 133 AD3d 1097, 1097-1099 [2015]; *People v Wlasiuk*, 32 AD3d 674, 681 [2006], *lv dismissed* 7 NY3d 871 [2006]).

Defendant further contends that County Court should have granted his request for a wholly circumstantial evidence charge and that the court's failure to give such an instruction deprived him of a fair trial. We disagree and find that County Court did, in fact, give the legally appropriate charge (*see People v Hardy*, 26 NY3d 245, 249 [2015]). During the charge conference, defense counsel indicated that defendant wanted a "full circumstantial evidence charge" read to the jury. County Court replied that it was giving a modified charge and that it believed there to be direct evidence. Defense counsel objected, arguing that there was no direct evidence of the crime. Thereafter, during its charge, County Court instructed the jury as to the difference between direct and circumstantial evidence, set forth the legal definitions of both and never told the jury whether or not either type of evidence was present.

We agree with defendant that his statements to his mother were circumstantial evidence, as they required an inference to be drawn and were not direct admissions of guilt with respect to the charged crime (*see People v Hardy*, 26 NY3d at 251). However, in light of the particular circumstances present here, the testimony of forensic pathologist James Terezian constituted direct evidence that the victim died of asphyxiation "due to smothering" and not from an accidental drowning (*see generally People v Denis*, 276 AD2d 237, 244 [2000], *lv denied* 96 NY2d 782 [2001]; *compare People v Culver*, 192 AD2d 10, 17 [1993], *lv denied* 82 NY2d 716 [1993]). In any event, regardless of whether the pathologist's testimony constitutes direct evidence, a review of the jury instructions reveals that County Court properly instructed the jury with respect to circumstantial evidence despite its earlier indication that it would not do so. Specifically, County Court instructed that the jury "must always be satisfied that the surrounding or collateral facts have been proven beyond a reasonable doubt" and that any inference made "must flow reasonably and naturally from the facts proven [and] be consistent with all such facts proven." The court further advised the jury that "[i]t must appear that the inference of guilt is the only one that can be fairly and reasonably drawn from the facts and that the evidence excludes

beyond a reasonable doubt every reasonable hypothesis of innocence." In this regard, although the court did not read the pattern criminal jury instruction entitled "Circumstantial Evidence" verbatim, it modified the instruction slightly, while including all of the legally required language; in our view, this was sufficient to apprise the jury of the governing law (*see People v Dory*, 59 NY2d 121, 129 [1983]) and renders defendant's appellate contention unpersuasive (*see e.g. People v Costa*, 256 AD2d 809, 809 [1998], *lv denied* 93 NY2d 872 [1999]). Considering that County Court instructed the jury that it must be satisfied " 'that the inference of guilt is the only one that can fairly and reasonably be drawn from the facts, and that the evidence excludes beyond a reasonable doubt every reasonable hypothesis of innocence' " (*People v Ford*, 66 NY2d 428, 441 [1985], quoting *People v Sanchez*, 61 NY2d 1022, 1024 [1984]; *accord People v Perry*, 251 AD2d 895, 898 [1998], *lv denied* 94 NY2d 827 [1999]), County Court's circumstantial evidence charge was sufficient and, accordingly, defendant was not deprived of a fair trial.

Defendant's *Molineux* challenge has not been properly preserved for our review, and his remaining contention has been considered and found to be without merit.

Lahtinen, J.P., McCarthy, Egan Jr. and Lynch, JJ., concur. Ordered that the judgment is affirmed.